The questions involved in this appeal arise upon exceptions taken by plaintiff to the rulings of his Honor in confirming the report of the referee, to whom the cause was referred to state an account of the sum remaining due to defendants by plaintiff upon the mortgage debt, and also the sum which may be due on an unsecured indebtedness, and to take the testimony and report the same with his findings of fact and law. The exceptions raise three issues:
1. Whether there was any evidence to sustain the referee in finding that the $615 note and the $300 note represented (or were in evidence of) moneys paid by defendants' testator as surety for plaintiff.
2. Whether there was any evidence to sustain his findings as to the application of certain payments made by plaintiffs to the defendants; and,
3. Whether the payment and cancellation by the testator of the notes, to which he was surety, operated as a release of the security and indemnity which had been conveyed to him under mortgage "B," set out in the record.
It appears from the facts stated that the plaintiff was indebted to Ford Egerton in about the sum of $700, to Green Yarborough in about the sum of $300, and to Pretzfelder, Kline Co. in the sum of $357.50, which were evidenced by his notes with Sherrod Sledge as surety; and also to Sherrod Sledge in about the sum of $440. And to secure the said *Page 116 
debt due to Sherwood Sledge, and to hold him harmless, and to indemnify him against loss on account of his suretyship, plaintiff, on the 16th day of December, 1889, executed to him a mortgage upon real and personal property, with power of sale in case of default. Said Sledge died about the year 1896, and his executors undertook to sell the securities contained in the mortgage to satisfy the amount due to their testator on account of the individual indebtedness, and also the amount which they claimed that he had been compelled to pay in satisfaction of those notes upon which he was surety. Plaintiff claimed that he had paid a part of said secured indebtedness himself, and had also made payments to the testator to such amount that there was little, if anything, due, and that the testator did not cause to be assigned to a trustee for his benefit such note or notes as he may have paid off for plaintiff, whereby, upon payment, the same were cancelled, and thus became a simple liability upon assumpsit, and exempt from the operation of the mortgage; and applied for and obtained an order of Court restraining defendants from making sale of the property, and asking that an account be taken to ascertain his true and legal indebtedness, if any.
The matters in dispute were referred to a referee, who reported his findings of fact and conclusions of law, accompanied by the evidence, to the Court, upon the hearing of which his Honor overruled exceptions taken by plaintiff and rendered judgment in favor of defendants, to which plaintiff excepted and appealed.
The evidence shows that among the papers of the testator the executors found the following, concerning the dealings between the plaintiff and the testator:
(1) Note of $286.26, dated December 10, 1889, executed to Green 
Yarborough, due December 10, 1890, with interest at 8 per cent, signed by Wesley Burnett and Sherrod Sledge, with divers credits of interest endorsed. *Page 117 
(2) Note for $443, dated February 14, 1889, due on December 31, after date, payable to order of Sherrod Sledge, bearing 8 per cent interest (with credits of interest endorsed), signed by Wesley Burnett.
(3) Note dated January 17, 1894, due at one year, for $615, with interest at 8 per cent, payable to the order of Sherrod Sledge, signed by Wesley Burnett, with credits of interest endorsed.
(4) Note dated December 6, 1890, due one day after date, for $300, with interest at 8 per cent, payable to the order of Sherrod Sledge, signed by Wesley Burnett, with divers credits of interest endorsed.
(5) Note dated December 10, 1889, for $107, payable December 10, 1890, to order of F. N. Egerton, with interest at 8 per cent, signed by Wesley Burnett and Sherrod Sledge, with divers credits of interest endorsed.
The referee found as facts, and so stated in his report, that the $615 note represented a part of the indebtedness due Ford Egerton which was paid off by Sherrod Sledge, who accepted it in evidence thereof; and that the $300 note represents the money furnished by Sledge to Burnett to pay off the Pretzfelder, Kline Co. note, and was given in evidence of the same. His Honor sustained said findings, to which plaintiff excepted upon the ground that there was no evidence to support the findings — being exceptions Nos. 1, 2, 3 and 4. In considering these exceptions, a careful search of the record fails to discover any error in the rulings of his Honor in sustaining the findings of the referee. From the evidence of F. N. Egerton, it appears, without contradiction, that Sherrod Sledge paid the debt due Ford Egerton, which was secured in the mortgage, Exhibit "B." And from the evidence of T. W. Bickett, it appears that he had in his hands for collection, as attorney of the executors, all of the evidences of indebtedness against the plaintiff, of which he *Page 118 
notified Burnett; that Burnett came to see him, and he went over all the papers with Burnett, and insisted that the property conveyed in the mortgages was inadequate security for the debts, and that he would have to reduce the amount. He went over the property in mortgage "B" with him, and at no time did Burnett suggest that any of the notes were unsecured, but contended that upon a fair sale the security was sufficient to pay all the notes. He afterwards made a proposition to Burnett that if he would make a new paper covering all the notes, and would convey the 63- and 35-acre tracts, which were mentioned in mortgage "A," together with all the property in mortgage "B," the executors would agree to accept 6 per cent interest from the time the 6-per-cent interest law went into effect. Burnett accepted the proposition, and in pursuance thereof he drew the paper marked Exhibit "D," dated January 17, 1896, and read it over to Burnett, and he agreed to what was in it, and agreed to execute it, and carried it home for the purpose of having his wife execute it. In Exhibit "D" (which was a mortgage drawn for Burnett and his wife to execute to complete the proposition made and accepted, conveying as security the lands proposed), there is recited the indebtedness of Burnett to Sherrod Sledge which was intended to be secured, viz: "Note of December 10, 1889, executed to F. N. Egerton and transferred to said Sledge for $107; note of December 10, 1889, executed to Green Yarborough, and duly transferred to said Sledge, for $286.26; note of February 14, 1889, for $443; note of January 31, 1888, for $600; note of December 6, 1890, for $300; note of January 17, 1894, for $615 — all of which notes are past due and bear interest at 8 per cent per annum, and are secured by two several mortgages recorded (being mortgages `A' and `B') . . . . . ."; and it further states that "the said Wesley Burnett desires, without in any way destroying, altering or abridging the existing securities *Page 119 
to said debt, it being expressly understood that the same shall stand, to give to the said Sherrod Sledge still other and further security to savehim harmless from all loss, and to that end," etc. (The italics being ours.) To all of which Burnett then assented, but afterwards refused to execute the paper. But at no time did he ever suggest, during their negotiations, that any of those notes were unsecured. This, we think, was clearly some evidence to establish the facts, as found by the referee, that the $615 note and the $300 note represented money paid by Sledge for Burnett on account of his suretyship, specified and secured in Exhibit "B," and was properly considered by him. The $300 note was executed by Burnett about one year after the execution of mortgage "B" (and just about the time of the maturity of the Pretzfelder, Kline Co. note); the $615 note was executed by Burnett to Sledge a little over four years thereafter, upon each of which Burnett annually paid the interest, and admitted to the witness Bickett that they were secured in mortgage "B," by acknowledging that the debts and recitals therein were correct; which is further supported by the evidence of F. N. Egerton, who said that the debt due to Ford Egerton was paid by Sledge. It is true, as counsel insist, that Burnett testified positively that he paid the Pretzfelder, Kline Co. note himself, and did not get the money from Sledge. But there being evidence to the contrary, and the referee being the trier of the facts, personally observing the manner, conduct and bearing of the witnesses, and the proper judge of the weight to which the evidence was entitled, we think his Honor properly sustained his findings as to them.
Nor do we find any error in his sustaining the report and findings as to the application of the payments (being exceptions 5 and 7) made under the arrangement between them, whereby, upon payment of a certain part of the indebtedness within a given time, the residue would be indulged. Plaintiff *Page 120 
failed to pay the amount agreed upon, and gave no instructions as to the application of the amount paid until after the credits had been entered by the creditor, who was justified in law in applying it to such debts as he saw fit. Jenkins v. Beal, 70 N.C. 440; Lester v. Houston, 101 N.C. 605.
The last contention to be considered (being exceptions 6 and 8) was pressed with great force by learned counsel for plaintiff, but we can not agree with him, and must sustain his Honor in overruling those exceptions. It is based upon the principle that if a surety desires to preserve for his benefit an existing security for the debt which he is called upon to discharge, the debt and security (which follows the debt) must be assigned to a trustee, otherwise the payment will be in satisfaction and cancellation of the debt and a release of the security, leaving the surety a simple contract creditor. Sherwood v. Collier, 14 N.C. 380, 24 Am. Dec., 264; Briley v. Sugg, 21 N.C. 366, 30 Am. Dec., 172; Tiddy v.Harris, 101 N.C. 589; Browning v. Porter, 116 N.C. 62. But in this the debts for which the testator was security were not themselves secured; they were simple contract debts, and made good to the creditor solely by the liability of Sledge, the surety. Sledge, the surety, was secured and indemnified against loss by reason of his suretyship, by mortgage "B," wherein the plaintiff conveyed certain lands and personalty for that purpose — having declared and recited therein, "Whereas, the said Sherrod Sledge has become surety on said notes to their payment when due, and the said Wesley Burnett desires to hold him harmless and to indemnify him against any and all possible loss on their account * * *; if the said Wesley Burnett shall fail to pay the amounts due on the therein several notes above described when they shall become due, and by such failure and default the said Sledge is compelled, as surety, to pay the same, or either of the same, or any part of either, * * *" From *Page 121 
the expressed terms of the instrument, it clearly appears that it was not intended to secure the notes to the creditor, but to secure to the surety such amount as he might be compelled to pay by reason of his liability assumed for Burnett in the extinguishment and cancellation of said notes. The intervention of a trustee could in no event have been a benefit to Sledge, for his redress against Burnett under the terms of mortgage "B" was for the recovery of such amount as he would have to pay in extinguishing said notes, or any part thereof. The liability of Burnett, therefore, under his said mortgage is for such amount as Sledge may have had to pay, which amount has been ascertained by the referee, and there being no error in the rulings of his Honor, the judgment must be
Affirmed.